**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| AMERISURE MUTUAL INSURANCE COMPANY, | § § § | |
| *Plaintiff* | § | SA-20-CV-01332-XR |
| -vs- | § § | |
| | § | |
| MCMILLIN TEXAS HOMES, LLC, | § | |
| *Defendant* | § | |

**ORDER**

On this date, the Court considered Plaintiff's motion for summary judgment (ECF No. 31), Defendant's response (ECF No. 33), Plaintiff's reply (ECF No. 34), Defendant's sur-reply (ECF No. 36), and Plaintiff's sur-reply (ECF No. 38). After careful consideration, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND[1]**

This is a general liability insurance coverage dispute concerning Plaintiff Amerisure Insurance Company's ("Amerisure") duty to defend and indemnify Defendant McMillin Texas Homes ("McMillin") against several homeowner construction defect claims. McMillin is a developer, general contractor, and home seller. Amerisure issued McMillin Commercial General ("CGL") Liability Policies for nine consecutive years between April 25, 2009 to April 26, 2018 (collectively, "Policies"). During this period, McMillin constructed multiple homes in various residential communities in the San Antonio area. After the homes were completed, homeowners observed defects in the artificial stucco exterior finish. Several homeowners made demands pursuant to Chapter 27 of the Texas Property Code (Residential Construction Liability Act or RCLA), filed lawsuits, or demanded arbitration. The claims are catalogued below:

---

[1] The facts are undisputed unless otherwise noted.

| RCLA Demands: | |
|---|---|
| Kercheville, Rasoully, Reddy | "Damages have been noticed on the exterior stucco finish of the residence. . . . [T]he stucco observed at the residence was not installed in accordance with the code in effect at the time of the original construction and the stucco installed over the frame sections of the residence shall be removed and replaced." *See* Exh. 12 at App. 1586–87;[2] Exh. 16 at App. 1598; Exh. 17 at App. 1600–01. |
| King | "My clients have observed significant water leakage coming from the windows along with separation of the window seals and windows themselves from the wall. This is also causing water damage to the home, and quite possibly mold problems as a result, and much of which could be along the outside walls of the home. Continued failure to complete the repairs and inspection for mold or other issues caused by the problem will result in it becoming more extensive. . . .  [T]here were discovered openings at the wall ends, cracks that go from the foundation to the upper floors, and separation of stucco panels." Exh. 13 at App. 1589. |
| Kusch | "The general nature of the construction defects being claimed by the Claimants, relate to construction defects associated with the application of the exterior stucco system to the home, and the potential result of water intrusion, mold, wood rot and damage to other property. . . . The construction defects alleged relate to the inadequate and improper installation of the building envelope, which includes the exterior stucco systems, windows, framing, paint and/or roof. The concerns include, but are not limited to, (i) inadequate stucco thickness and/or improper stucco application . . . ." Exh. 14 at App. 1592. |
| Oliver | "Lack of proper and continuous flashing has caused long term water intrusion into the wall cavities. . . . The long-term water intrusion has severely damaged the wood framing at the rear wall; Unsealed wall penetration at AC drain lines and deck connectors have allowed water intrusion to interior framing. . . . The rear deck columns are over spanned and have deflected beyond code limits." Exh. 15 at App. 1595. |

---

[2]     References to the Appendix (ECF No. 32) to Amerisure's motion for summary judgment are cited according to the convention in the parties' briefing—by exhibit and page number.

| Arbitration: | |
|---|---|
| Victor | "[D]amages have been noticed on the exterior stucco finish of the residence. . . . [T]he stucco observed at the residence was not installed in accordance with the code in effect at the time of the original construction and the stucco installed over the frame sections of the residence shall be removed and replaced." Exh. 19 at App. 1616. |
| Lawsuits: | |
| Aguilar, Apodaca, Caraveo, Chambers, Champagne, Dal Santo, Doerr, Effingham, Elms, Fitzgerald, Garza, Jackson, Hardemon, Ingham, Jackson, Moreno | "As a direct and proximate result of the construction defects and violations, the Home has suffered damages not only to the exterior stucco, but also to the underlying wire lath, paper backing, house wrap, flashing, water resistive barriers, sheathing, interior walls, interior floors and/or other property." *See* Exh. 10 at App. 1567; Exh. 20 at App. 1623; Exh. 21 at App. 1636; Exh. 24 at App. 1670; Exh. 25 at App. 1682; Exh. 26 at App. 1694; Exh. 27 at App. 1706; Exh. 28 at App. 1727; Exh. 31 at App. 1761; Exh. 32 at App. 1773; Exh. 35 at App. 1804; Exh. 36 at App. 1816; Exh. 37 at App. 1828; Exh. 38 at App. 1841; Exh. 41 at App. 1875. |
| Apodaca, Dal Santo, Doerr, Frey, Jackson, Lightfoot, Vidal-Saide | "Subsequent to construction of the Home, certain design and construction deficiencies were observed at the Home which include, but are not limited to, an inadequately and improperly installed stucco system." *See* Exh. 21 at App. 1635; Exh. 27 at App. 1705; Exh. 28 at App. 1726; Exh. 34 at App. 1795; Exh. 38 at App. 1840; Exh. 39 at App.1853; Exh. 45 at App. 1912. |
| Aguilar, Bolude, Canales, Caraveo, Chambers, Champagne, Edwards, Doolittle, Effingham, Elms, Faz Orduna, Fitzgerald, Garza, Hardemon, Heintzelman, Ingham, Lopez, Moreno, Striegl, Trinh, Zordan | "Subsequent to construction of the Home, certain design and construction deficiencies were observed at the Home which include, but are not limited to, an inadequately and improperly installed stucco system, improperly installed underlying wire lath, paper backing, house wrap, flashing, water resistive barriers and sheathing." *See* Exh. 10 at App. 1566; Exh. 11 at App. 1578; Exh. 18 at App. 1606; Exh. 20 at App. 1622; Exh. 22 at App. 1647; Exh. 23 at App. 1658; Exh. 24 at App. 1669; Exh. 25 at App. 1681; Exh. 26 at App. 1693; Exh. 29 at App. 1738; Exh. 30 at App. 1749; Exh. 31 at App. 1760; Exh. 32 at App. 1772; Exh. 33 at App. 1784; Exh. 35 at App. 1803; Exh. 36 at App. 1815; Exh. 37 at App. 1827; Exh. 40 at App. 1863; Exh. 41 at App. 1874; Exh. 44 at App. 1901; Exh. 46 at App. 1923. |

| | |
|---|---|
| Aguilar, Apodaca, Bolude, Canales, Caraveo, Chambers, Champagne, Dal Santo, Doerr, Doolittle, Edwards, Effingham, Elms, Faz Orduna, Fitzgerald, Frey, Garza, Hardemon, Heintzelman, Ingham, Jackson, Lightfoot, Lopez, Moreno, Striegl, Trinh, Vidal-Saide, Zordan | "A licensed engineer inspected the Home and concluded, based upon his professional opinion, that the residence contained an inadequately and improperly installed stucco system, among other deficiencies." |
| | "Plaintiff[s] now seek[s] recovery herein for damages proximately caused by the improper design and/or construction of the Home, which has resulted in numerous defects and deficiencies in the various systems and components in the Home, including violations of local and state building codes." *See* Exh. 10 at App. 1566; Exh. 11 at App. 1578; Exh. 18 at App. 1606; Exh. 20 at App. 1622; Exh. 21 at App. 1635; Exh. 22 at App. 1647; Exh. 23 at App. 1658; Exh. 24 at App. 1669; Exh. 25 at App. 1681; Exh. 26 at App. 1693; Exh. 27 at App. 1705, Exh. 28 at App. 1726; Exh. 29 at App. 1738; Exh. 30 at App. 1749; Exh. 31 at App. 1760–61; Exh. 32 at App. 1772; Exh. 33 at App. 1784, Exh. 34 at App. 1795; Exh. 35 at App. 1803; Exh. 36 at App. 1815; Exh. 37 at App. 1827; Exh. 38 at App. 1840; Exh. 39 at App. 1853; Exh. 40 at App. 1863; Exh. 41 at App. 1874; Exh. 44 at App. 1901; Exh. 45 at App. 1912; Exh. 46 at App. 1923. |
| Qing | "Construction of the Chang Home was completed in December of 2010. After purchase of the home, the home has experienced numerous problems and suffers from a number of latent defects. . . . [T]he damage to the exterior walls was the result of a defectively constructed stucco exterior wall system . . . . [T]he extent of deterioration of the exterior sheathing observed during his inspections was excessive and indicative of a substantial defect in the building envelope of the home. . . . The stucco should be replaced using a code-compliant assembly . . . . [I]f fungal growth is found within the wall cavities, additional remediation of the interior features of the home may be warranted." Exh. 42 at App. 1885–87. |
| Roberson | "After the Home was constructed, certain design and construction defects have been observed, which include, but are not limited to, an inadequately and improperly installed exterior stucco system. A licensed engineer inspected the Home, and determined the Home's stucco system suffered from a number of deficiencies. They included, but are not limited to: |

|  | a) Use of dissimilar materials that were not isolated from the stucco, including but not limited to windows, kick outs, and overhangs;<br>b) Improper installation of sealant;<br>c) Missing accessories at locations where vertical and horizontal surfaces meet;<br>d) The metal lath is not fully embedded in the stucco;<br>e) The stucco is less than 7/8" (inches) in thickness;<br>f) The metal lath is rusted;<br>g) The stucco was improperly cured; and,<br>h) The control joints were improperly installed.<br><br>"The stucco deficiencies are alarming because they inhibit the ability of the stucco system to resist cracking from internal and external stresses, and to drain infiltrated water to the exterior. The pervasiveness of the stucco system's deficiencies indicate Defendant failed to design and construct the Home using ordinary care in a reasonable and non-negligent manner in accordance with applicable building codes and industry standards, and failed to use ordinary care in the supervision of its employees, and in selecting an independent contractor. Plaintiff suffered damages as a result." Exh. 43 at App. 1893–94. |

McMillin tendered the various claims to Amerisure, seeking defense and indemnity under the Policies. Amerisure seeks declaratory judgment that (1) Amerisure has no duty to defend McMillin against these claims under the Policies; and (2) Amerisure has no duty to indemnify McMillin against these claims under the Policies. ECF No. 29 at 13. McMillin has asserted a counterclaim for breach of contract for refusing to defend and indemnify McMillin against the homeowners' claims. ECF No. 30 at 11–16.

The relevant policy provisions are as follows:

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit"

seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

   b.  This insurance applies to "bodily injury" and "property damage" only if:

     (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"

     (2) The "bodily injury" or "property damage" occurs during the policy period; and

     (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

   c.  "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

   d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

     (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

     (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

     (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.[3]

**2.  Exclusions**

This insurance does not apply to:

   **a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. . . .

. . .

   **j.  Damage To Property**

"Property damage" to:

     (1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement,

---

[3]    *See* Exh. 1 at App. 91; Exh. 2 at App. 293; Exh. 3 at App. 482; Exh. 4 at App. 659; Exh. 5 at App. 829; Exh. 6 at App. 997; Exh. 7 at App. 1160; Exh. 8 at 1318; Exh. 9 at App. 1487.

restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

. . .

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**k.  Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.  Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.[4]

## SECTION V – DEFINITIONS

. . .

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

. . .

16.  "Products-completed operations hazard":

a.  Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

a) When all of the work called for in your contract has been completed.

b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project. Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b.  Does not include "bodily injury" or "property damage" arising out of:

. . .

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products completed operations are subject to the General Aggregate Limit.

---

[4]    *See* Exh. 1 at App. 92–95; Exh. 2 at App. 294–97; Exh. 3 at App. 483–86; Exh. 4 at App. 660–63; Exh. 5 at App. 830–33; Exh. 6 at 998–1001; Exh. 7 at App. 1161–64; Exh. 8 at App. 1319–22; Exh. 9 at App. 1488–91. The phrase, "This exclusion does not apply to operations performed on your behalf by a subcontractor," is deleted by Endorsement Form CG 2294 1001, which is also present in all the Policies. *See* Exh. 1 at App. 107; Exh. 2 at App. 279; Exh. 3 at App. 508; Exh. 4 at App. 686; Exh. 5 at App. 852; Exh. 6 at App.1020; Exh. 7 at App. 1185; Exh. 8 at App. 1347; Exh. 9 at App. 1515.

17.   "Property damage" means:
   a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
   b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it. . . .

18.   "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
   a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
   b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

. . .

21.   "Your product":
   a.  Means:
      (1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
         a)  You;
         b)  Others trading under your name; or
         c)  A person or organization whose business or assets you have acquired; and
      (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
   b.  Includes
      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
      (2) The providing of or failure to provide warnings or instructions.

. . .

22.   "Your work":
   a.  Means:
      (1) Work or operations performed by you or on your behalf; and
      (2) Materials, parts or equipment furnished in connection with such work or operations.
   b.  Includes
      (1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and
      (2) The providing of or failure to provide warnings or instructions.[5]

## EXCLUSION PRODUCTS – COMPLETED OPERATIONS HAZARD

. . .

This insurance does not apply to "bodily injury" or "property damage" included within the "products-completed operations hazard."[6]

---

[5]    *See* Exh. 1 at App. 104–06; Exh. 2 at App. 306–08; Exh. 3 at App. 495–97; Exh. 4 at App. 672–74; Exh. 5 at 842–44; Exh. 6 at App. 1011–12; Exh. 7 at App. 1174–75; Exh. 8 at App. 1132–33; Exh. 9 at App. 1501–02.

[6]    Only the 2015–16, 2016–17, and 2017–18 policies contain this endorsement, Form CG 2104 1185. *See* Exh. 7 at App. 1178; Exh. 8 at App. 1137; Exh. 9 at App. 1505.

Amerisure argues that it has no duty to defend or indemnify McMillan as a matter of law because (1) the homeowners' claims do not allege "property damage," and instead allege only faulty work by McMillin; (2) the Policies contain exclusions which bar coverage for defects in McMillin's work, specifically exclusions J(5), J(6), K, and L; (3) some of the Policies contain exclusions barring coverage for property damage arising out of completed operations; and (4) the costs of removing the allegedly defective exterior finish and repairing ancillary damage are not "potentially covered claims." ECF No. 31 at 2.

## DISCUSSION

### I.    Summary Judgment Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en

banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party, *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

## II.    Interpretation of Insurance Policies Under Texas Law

Under Texas Law, insurance policies are construed as are contracts generally, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed. *Kelley–Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977). When the words of a policy are unambiguous, they are to be given their plain, ordinary, and generally accepted meaning, unless the policy clearly indicates that the contractual terms have been used in a different or technical sense. *Puckett v. U.S. Fire Ins. Co.*, 678 S.W.2d 936, 938 (Tex. 1984). When the language of a policy is susceptible to more than one reasonable interpretation, it should be construed strictly against the insurer and

liberally in favor of the insured. *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987). Where the question of interpretation involves an exception or limitation on the insurer's liability under the policy, an even more stringent construction is required. *Id.*

An insurer has two responsibilities relating to coverage—the duty to defend and the duty to indemnify. *See D.R. Horton–Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009). Two documents determine an insurer's duty to defend—the insurance policy and the third-party plaintiff's pleadings in the underlying litigation, which the court must review "without regard to the truth or falsity of those allegations." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 308 (Tex. 2006) (citations omitted). This is known as the "eight-corners rule." *Id.* (citations omitted). Under the eight-corners rule, the "[f]acts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination and allegations against the insured are liberally construed in favor of coverage." *Id.* Factual allegations that *potentially* support a covered claim are all that is needed to invoke the insurer's duty to defend. *Id.* at 310 (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 26 (Tex. 1965)). Since the duty to defend is based solely on the pleadings and policy, it "is a question of law to be decided by the court." *Fielder Rd. Baptist Church v. Guide One Elite Ins. Co.*, 139 S.W.3d 384, 388 (Tex. App.—Fort Worth 2004), *aff'd* 197 S.W.3d 305 (Tex. 2006); *State Farm Lloyd's v. Kessler*, 932 S.W.2d 732, 736 (Tex. App.—Fort Worth 1996, writ denied).

The duty to defend is distinct from, and broader than, the duty to indemnify, which is not governed by the eight-corners rule. *See D.R. Horton–Tex.*, 300 S.W.3d at 743–44; *Utica Nat'l Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004). The duty to indemnify depends on the facts actually established in the underlying suit. *GuideOne*, 197 S.W.3d at 310. "In determining coverage, a matter dependent on the facts and circumstances of the alleged injury-

causing event, parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify." *D.R. Horton–Texas*, 300 S.W.3d at 741.

The insured has the initial burden to plead and prove that the benefits sought are potentially covered by the insurance policy at issue. *See Nat'l Union Fire Ins. Co. of Pittsburgh, Penn. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008). The insurer, on the other hand, bears the burden of establishing that one of the policy's limitations or exclusions constitutes an avoidance or affirmative defense to coverage. *Id.* at 404 (citing *Lone Star Heat Treating Co. v. Liberty Mut. Fire Ins. Co.*, 233 S.W.3d 524, 526 (Tex. App.—Houston [14th Dist.] 2007, no pet.); *see also* TEX. INS. CODE § 554.002 ("Language of exclusion in the contract or an exception to coverage claimed by the insurer or health maintenance organization constitutes an avoidance or an affirmative defense."). Once the insurer demonstrates that an exclusion arguably applies, the burden then shifts back to the insured to show that the claim does not fall within the exclusion or that it comes within an exception to the exclusion. *See Century Surety Co. v. Hardscape Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009). The court must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not unreasonable, even if the construction urged by the insurer appears to be more reasonable. *Utica Nat'l Ins. Co. of Tex.*, 141 S.W.3d at 202. "Only if the exclusion clearly and unambiguously prohibits coverage does an insurer meet its burden." *Energy Res., LLC v. Petroleum Sols., Int'l, LLC*, No. H:08–656, 2011 WL 3648083, at *12 (S.D. Tex. Aug. 17, 2011) (citing *Nautilus Ins. Co. v. Country Oaks Apts.*, 566 F.3d 452, 454 (5th Cir. 2009)).

### III.   Analysis

Amerisure maintains that this suit "boils down to one simple principle:" because "a CGL policy is not a performance bond," claims arising out of McMillin's faulty workmanship on the stucco exterior are not covered under the Policies. But the Texas Supreme Court has rejected this argument as a principle of construction:

> Any similarities between CGL insurance and a performance bond . . . are irrelevant, however. The CGL policy covers what it covers. No rule of construction operates to eliminate coverage simply because similar protection may be available through another insurance product.

*Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 10 (Tex. 2007). Instead, to establish that a CGL policy does not cover the repair or replacement of the insured's defective work, the insurer must rely on the language of the applicable policy and the underlying claims of damage. *See id.* ("The assumption [that CGL insurance does not cover the insured's defective work] often proves true in many cases because several acts of faulty workmanship do not fall within coverage, either because they are not an 'occurrence,' 'accident,' or 'property damage,' or they are excluded from coverage by specific exclusions.").

Although the Court will address Amerisure's arguments more fully below, they generally suffer from the same conceptual defects: ignoring the distinction between the duty to defend and the duty to indemnify and disregarding the rules of construction favoring the insured. Generally, Amerisure denies that the underlying complaints have invoked its duty to defend—or its duty to indemnify—based on a perceived lack of specificity in the factual allegations. *See generally* ECF No. 31. But to invoke the insurer's duty to defend, the insured need only proffer factual allegations that, liberally construed, *potentially* support a covered claim. *GuideOne*, 197 S.W.3d at 308, 310. McMillin has satisfied that burden here.

13

### A. Amerisure's Duty to Defend

#### 1. The allegations of "property damage" are sufficient

Amerisure argues the homeowners' faulty-workmanship claims do not allege "property damage" under the terms of its Policies. ECF No. 31 at 13–16. Specifically, Amerisure asserts that, with the exception of the Qing lawsuit, the homeowners have not alleged that the defective stucco has caused "physical change to tangible property," but have simply alleged that "the improper design, construction, or installation of the exterior stucco system is deficient, has reduced the value of the properties, and must be removed and replaced." *Id.* at 15. "The gravamen of all the Insurance Claims," according to Amerisure, "is plainly the failure of the allegedly faulty exterior finish of the homes to meet applicable building codes." *Id.*

Based on its own, selective citations to the underlying complaints, Amerisure insists that "[t]here is no allegation that any property damage exists, but merely that the stucco suffers from construction defects." *Id.* This assertion is patently false, as evidenced by the explicit claims of damage to property other than the exterior stucco in the underlying complaints:

- As a direct and proximate result of the construction defects and violations, **the Home has suffered damages** not only to the exterior stucco, but also **to the underlying wire lath, paper backing, house wrap, flashing, water resistive barriers, sheathing, interior walls, interior floors and/or other property**.[7]

- "Plaintiff[s] now seek[s] recovery herein for damages proximately caused by the improper design and/or construction of the Home, **which has resulted in numerous defects and deficiencies in the various systems and components in the Home**, including violations of local and state building codes."[8]

---

[7]      *See* Exh. 10 at App. 1567; Exh. 20 at App. 1623; Exh. 21 at App. 1636; Exh. 24 at App. 1670; Exh. 25 at App. 1682; Exh. 26 at App. 1694; Exh. 27 at App. 1706; Exh. 28 at App. 1727; Exh. 31 at App. 1761; Exh. 32 at App. 1773; Exh. 35 at App. 1804; Exh. 36 at App. 1816; Exh. 37 at App. 1828; Exh. 38 at App. 1841; Exh. 41 at App. 1875.

[8]      *See* Exh. 10 at App. 1566; Exh. 11 at App. 1578; Exh. 18 at App. 1606; Exh. 20 at App. 1622; Exh. 21 at App. 1635; Exh. 22 at App. 1647; Exh. 23 at App. 1658; Exh. 24 at App. 1669; Exh. 25 at App. 1681; Exh. 26 at App. 1693; Exh. 27 at App. 1705, Exh. 28 at App. 1726; Exh. 29 at App. 1738; Exh. 30 at App. 1749; Exh. 31 at App. 1760–61; Exh. 32 at App. 1772; Exh. 33 at App. 1784, Exh. 34 at App. 1795; Exh. 35 at App. 1803; Exh. 36 at App. 1815; Exh. 37 at App. 1827; Exh. 38 at App. 1840; Exh. 39 at App. 1853; Exh. 40 at App. 1863; Exh. 41 at App. 1874; Exh. 44 at App. 1901; Exh. 45 at App. 1912; Exh. 46 at App. 1923.

Amerisure suggests that, in reviewing the homeowners' claims, the Court should disregard "stock phrases" such as "damage to property," "numerous defects and deficiencies," and "costs of repair" as "vague and conclusory," ECF No. 31 at 15–16, and "artful pleading." *Id.* at 16 n.30; ECF No. 34 at 1. This position is flawed in at least three respects.

First, Amerisure's reference to "artful pleading" disregards the distinction between first-party and third-party claims. The Supreme Court of Texas has explicitly cautioned against "mix[ing] them together":

> There are many differences between first-party and third-party claims. For one thing, **a duty-to-defend claim is construed more broadly than any other insurance claim,** as courts tend to apply it not only to covered claims but to potentially covered claims or **even claims that are merely artfully pleaded.**

*Lamar*, 242 S.W.3d at 29. "Artful pleading, absent evidence of collusion between the third-party claimant and the insured" to create a duty to defend, "does not create an exception" to the eight-corners rule. *Liberty Surplus Ins. Corp. v. Allied Waste Sys., Inc.*, 758 F. Supp. 2d 414, 420 (S.D. Tex. 2010) (citing *GuideOne*, 197 S.W.3d at 311). The distinction is a practical one. Absent collusion with the insured, a third-party claimant has nothing to gain from invoking the insurer's duty to defend—the third-party claimant is as likely to recover from the insured as from the insurer. A first-party claimant, on the other hand, has a clear incentive to artfully plead claims such that they fall within the scope of the policy's coverage—if the claims are not covered, the claimant will not recover at all. Here, Amerisure has not presented any evidence that the homeowners colluded with McMillin to invoke Amerisure's duty to defend the underlying claims. Accordingly, there is no reason to look beyond the eight corners of the Policies and the complaints to determine whether the allegations *potentially* support a covered claim. *Id.* at 310.

Second, Amerisure's invitation to ignore the so-called "stock phrases" in the underlying complaints is directly at odds with Texas law, which requires courts to construe both the terms of

the policy and the factual allegations in the complaint liberally in favor of coverage, especially in the context of assessing the insurer's duty to defend. *GuideOne*, 197 S.W.3d at 308; *D.R. Horton–Tex.*, 300 S.W.3d at 743–44. Factual allegations that *potentially* support a covered claim are sufficient to invoke the insurer's duty to defend. *GuideOne*, 197 S.W.3d at 310.

At the same time that it asks the Court to disregard these "stock phrases" as overly vague, Amerisure proposes a narrow and rigid construction of certain allegations in the complaints that are also contrary to the eight-corners rule. For example, in light of the homeowners' reference to diminished property value as among its damages, Amerisure insists that none of the claims are covered because "faulty workmanship that merely diminishes the value of property without causing physical injury or loss of use does not involve 'property damage.'" ECF No. 31 at 14 (quoting *Lamar*, 242 S.W.3d at 10 (alteration marks omitted)). But a mere reference to a decline in property value does not remove a claim from the scope of coverage. Indeed, the Fifth Circuit has held that a diminution in value resulting from physical injury to tangible property constitutes damages "because of" property damage. In *Mid-Continent Cas. Co. v. Circle S Feed Store, LLC*, the Fifth Circuit stated: "[d]amages that result from 'property damage' within the meaning of a CGL policy may be measured according to the diminution in value of the property, as long as the diminution in value is attributable to the covered damage." 754 F.3d 1175, 1184 (5th Cir. 2014); (citing *Mid-Continent Cas. Co. v. Acad. Dev., Inc.*, 476 F. App'x 316, 319 (5th Cir. 2012) (Mid-Continent's policy like the policy here "includes recovery sought for economic losses, such as diminution in value, that are attributable to property damage")).

Likewise, Amerisure argues that "using the phrase 'property damage' to describe construction defects such as improperly installed stucco cannot turn a simple failure to meet specifications or building codes into an allegation of property damage." ECF No. 31 at 16. Even

assuming that violations of building codes do not constitute "property damage" under Texas law, a mere reference to a code violation does not warrant an assumption that the code violation is the sole injury alleged in the complaint. *See Am. Empire Surplus Lines Ins. Co. v. Multifamily Servs., Inc.*, No. 4:15-CV-3094, 2017 WL 6327678, at *5 (S.D. Tex. Sept. 27, 2017) ("Even if this exclusion intends to exclude injuries arising from building code violations (though the language of the exclusion is not explicit nor does it conform with the language formation of other policy exclusions applying to bodily injury), Buchan does not plead statutory violations as the sole cause of his injuries."). Where, as here, the underlying complaints allege additional property damage, Amerisure's citations to individual allegations that might not invoke its duty to defend independently amount to misplaced efforts seeking to turn the eight-corners rule on its head.

Finally, Amerisure's argument as to the sufficiency of the homeowners' allegations of "property damage" is unavailing insofar as it relies on authority addressing the insurer's duty to indemnify. *See* ECF No. 31 at 14 (citing *Lennar Corp. v. Great Am. Ins. Co.,* 200 S.W.3d 651, 677 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). In *Lennar*, an insured homebuilder built 400 houses in the Houston area with a synthetic stucco that was defectively designed such that it trapped water behind it, causing damage such as wood rot, mold, and termite infestation, among other problems, to other parts of the house. *Id.* at 661. Lennar removed the defective synthetic stucco from all the houses and replaced it with traditional stucco. Lennar also repaired resulting water damage to some of the houses and then sought indemnification from its carrier for all its replacement and repair costs. *Id.* The carrier refused, and Lennar sued for declaratory judgment on coverage. The Texas Court of Appeals held that the costs incurred by the homebuilder in repairing water damage to houses constituted "damages because of property damage" within the scope of a CGL policy where moisture resulted in water damage, including wood rot, damage to substrate,

sheathing, framing, insulation, sheetrock, wallpaper, paint, carpet, carpet padding, wooden trim, and baseboards, mold, and termite infestation amounting to physical injury to tangible property. *Id.* at 678. The costs of removing and replacing the defective stucco as a *preventative* measure, however, was not covered and did not constitute "property damage." *Id.* at 677. Thus, when Lennar undertook to replace the insulation in all the homes, not merely the ones with water damage, the cost of replacing insulation in the undamaged homes was not "damages because of . . . property damage." *Id.* at 678–79.

Amerisure's reference to *Lennar* is premature. *Lennar* involved a first-party claim for *indemnification* for the repair costs by the homebuilder, and thus, did not address the sufficiency of the allegations to invoke the insurer's separate duty to defend. By the time Lennar sued its insurer, the extent of the physical damage to each home, if any, and the necessary repairs were no longer in question—the repairs had already occurred. As in most cases addressing the duty to indemnify, the coverage determination in *Lennar* was dependent on the facts and circumstances of the injury-causing event as established during the litigation. *GuideOne*, 197 S.W.3d at 310; *D.R. Horton–Texas*, 300 S.W.3d at 741. Put differently, the determination was based on actual evidence rather than mere allegations. If anything, *Lennar* supports the Court's liberal construction of the allegations at this stage of the litigation, given that, ultimately, some of the claims for "property damage" in *Lennar* were covered and others were not. Adopting Amerisure's preferred approach might have the effect of denying McMillin coverage to which it was entitled under the Policies, and Texas law is clear that Policies and claims should be liberally construed in favor of coverage. *GuideOne*, 197 S.W.3d at 308.

In short, Amerisure invites the Court to seize on ambiguities in the factual allegations in the underlying complaints as reasons to deny coverage. Texas law, however, requires just the

opposite. The Court concludes that the factual allegations of property damage in the underlying complaints are sufficient to invoke Amerisure's duty to defend insofar as they potentially support a covered claim for damage to property other than the "exterior finish of the homes" that was the subject of McMillin's faulty work. *GuideOne*, 197 S.W.3d at 310.

### 2. Exclusions

Amerisure contends that several exclusions to coverage under the Policies excuse it from defending and indemnifying McMillin against the homeowners' claims. Specifically, Amerisure asserts that Exclusion J (Damage to Property), Exclusion K (Damage to Your Product), and Exclusion L (Damage to Your Work) apply "because the homes themselves are McMillin's work or product." ECF No. 31 at 2. It is Amerisure's burden to establish the applicability of an exclusion as a matter of law based on the allegations in the underlying pleadings, which are construed liberally in favor of the insured with all doubts regarding coverage being resolved in favor of the insured. *Tejas Specialty Grp., Inc. v. United Specialty Ins. Co.*, No. 02-20-00085-CV, 2021 WL 2252742, at *4, *11 (Tex. App.—Fort Worth June 3, 2021, no pet. hist.).

### a) Exclusions J(5) and J(6)

Exclusions J(5) and J(6) are standard in CGL coverage forms and preclude coverage for faulty workmanship. Both are limited by the phrase "that particular part" of property damaged due to the insured's work. This limitation precludes application of the exclusions to damage on other parts of the home or non-defective portions of the insured's work. The Fifth Circuit addressed Exclusions J(5) and J(6) in *Mid-Continent Casualty Co. v. JHP Development, Inc*:

> The plain meaning of the exclusion-property damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it" – is **that property damage only to parts of the property that were themselves the subjects of the defective work is excluded.** This becomes clear when the exclusion is broken down into its component requirements: the "particular part" referred to is the part of the property that (1)

must be restored, repaired or replaced (2) because the insured's work was incorrectly performed on it. The second requirement makes clear that the "particular part" of the property must have been the subject of incorrectly performed work. **The narrowing "that particular part" language is used to distinguish the damaged property that was itself the subject of the defective work from other damaged property that was either the subject of nondefective work by the insured or that was not worked on by the insured at all.**

557 F.3d 207 (5th Cir. 2009) (emphasis added).

Here, Amerisure suggests that the homeowners' claims fall within Exclusions J(5) and J(6) because "none of the Insurance Claims, with the exception of Qing, allege any property damage to any part of the homes other than the defective stucco systems." ECF No. 31 at 20. However, the very term "system" connotes multiple "parts."[9] It is not clear at the pleading stage which "parts" of the stucco system were the subject of the defective work by McMillin and which were not. Moreover, several of the homeowners appear to have alleged damages to parts of the house beyond the stucco system, including interior walls, interior floors, and other property.[10]

While Amerisure clearly takes issue with the specificity of the factual allegations in the complaints, the allegations must nonetheless be construed liberally in favor of the insured, with all doubts resolved in favor of McMillin. *Tejas Specialty Grp.*, 2021 WL 2252742, at *4, *11. The factual allegations contemplate property damage to parts of the homes that may not have been the subject of defective work by McMillin. Accordingly, Amerisure has failed to establish as a matter of law that Exclusions J(5) and J(6) "clearly and unambiguously" prohibit coverage for the homeowners' claims. *Energy Res., LLC*, 2011 WL 3648083, at *12.

---

[9]     *See* MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/system (defining "system" as "a regularly interacting or interdependent *group of items* forming a unified whole") (emphasis added) (last visited Mar.7, 2022).

[10]     *See* Exh. 10 at App. 1567; Exh. 20 at App. 1623; Exh. 21 at App. 1636; Exh. 24 at App. 1670; Exh. 25 at App. 1682; Exh. 26 at App. 1694; Exh. 27 at App. 1706; Exh. 28 at App. 1727; Exh. 31 at App. 1761; Exh. 32 at App. 1773; Exh. 35 at App. 1804; Exh. 36 at App. 1816; Exh. 37 at App. 1828; Exh. 38 at App. 1841; Exh. 41 at App. 1875.

### b)   Exclusions K (Damage to Your Product)

Exclusion K applies to "[p]roperty damage to 'your product' arising out of it or any part of it." The Amerisure policies define "your product" as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by: (a) You . . . ." Based on the text of the exclusion, Texas courts have held that this exclusion does not apply to real property. *See CU Lloyd's of Tex. v. Main Street Homes, Inc.*, 79 S.W.3d 687, 697 (Tex. App.—Austin 2002, no pet.) (Exclusion K does not apply to "the construction of [a] building because in ordinary language buildings are constructed or erected, not manufactured and because any ambiguity in the policy language must be construed against the insurer and in favor of the insured."). Accordingly, Exclusion K does not exclude the homeowners' claims from coverage under the Policies.

### c)   Exclusion L (Damage to Your Work)

Exclusion L, as modified by Endorsement Form CG 2294 1001, applies to "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" The Policies define "your work" as "work or operations performed by you or on your behalf." Exclusion L of a CGL policy removes coverage for property damage to the insured's completed work. *Lamar*, 242 S.W.3d at 11 (Exclusion L applies to the "products-completed operations hazard," and generally excludes coverage for "property damage" to the insured's completed work).

Amerisure submits that "[b]ecause McMillin's work or product, which is the entire home, is alleged to have damaged itself, all the damage is excluded" under Exclusion L. ECF No. 31 at 17. Amerisure's emphasis on the scope of McMillin's "work" is misplaced, however, because it ignores the second component to the exclusion—that it applies only to exclude damages to the insured's "completed" work.

In assessing when the duty to defend arises, the Supreme Court of Texas has embraced the "actual injury" or "injury-in-fact" approach rather than the "manifestation" rule. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 25–26 (Tex. 2008). Under the "actual injury" approach, an insurer must defend any claim of physical property damage that occurred during the policy term. *Id.* The "manifestation" rule, on the other hand, only imposes a duty to defend if the property damage becomes *evident or discoverable* during the policy term. *Id.* The date that the physical damage is or could have been discovered is irrelevant. *Id.*; *see also* Exhibit 1 at App. 91 ("This insurance applies to 'bodily injury' and 'property damage' only if: . . . The 'bodily injury' or 'property damage' occurs during the policy period . . .").

The underlying complaints do not specifically allege *when* property damage from McMillin's work occurred. Under those allegations, property damage could have occurred before, during, and after completion of McMillin's work. As McMillin points out, had Amerisure intend to exclude all damages arising out of *all* of McMillin's work—its ongoing *and* completed operations—it could have done so. *See* ECF No. 33 at 23. Instead, Amerisure explicitly limited the exclusions to preclude coverage for property damage to "completed work"—defective or not— and, with respect to ongoing operations, "that particular part" of property damaged due to the insured's defective work. *See* Exclusions J(5), J(6), and L.

In support of its position that Exclusion L applies, Amerisure cites to two cases addressing an insurer's duty to indemnify. In *American Home Assurance Co. v. Cat Tech LLC*, the Fifth Circuit concluded that a previous version of Exclusion L precluded coverage for damage to the portion of property upon which the insured performed repair services, but would not preclude coverage for damage to customer's property that the insured did not repair or service. 660 F. 3d 216 (5th Cir. 2011). In the course of repairing a hydrotreating reactor, the insured, Cat Tech,

damaged several of the reactor's components. The owner of the reactor obtained an arbitration award and Cat Tech sought indemnity under its CGL policies. The insurers refused based in large part upon the "your work" exclusions. The insurers filed an action for declaratory judgment that the exclusion precluded coverage and the district court agreed, granting summary judgment for the insurers. The Fifth Circuit reversed and remanded for further fact development, noting that "[f]or summary judgment in favor of the insurers to be appropriate, the insurers must demonstrate the absence of any genuine dispute of material fact as to application of the 'your work' exclusion." *Id.* at 224. The Fifth Circuit discussed the scope of Exclusion L at length but did not address its applicability in the context of ongoing operations.

In *Feaster v. Mid-Continent Casualty Company*, the Fifth Circuit applied Exclusion L to preclude an insurer's duty to indemnify after a default judgment against the insured homebuilder in the underlying case. 620 F. App'x 300 (5th Cir. 2015). The plaintiffs alleged damage to their property due to a defective foundation and soil preparation. The Fifth Circuit concluded that Exclusion L applied to exclude coverage of the insured's work because the homebuilder's "work" extended to the entire house, not merely repair to the foundation. *Id.* at 304. *Feaster* does not address the question of whether construction was ongoing at the time the alleged property damage occurred. Indeed, the Fifth Circuit acknowledged in *Feaster* that, "as the Texas Supreme Court interpreted it, the 'your work' provision 'generally excludes coverage for 'property damage' to the insured's *completed* work." *Id.* at 304 (emphasis added). Nonetheless, the property owners "[did] not appear to contest whether the "products-completed operations hazard" requirement [was] satisfied." *Id.*

The only case cited in Amerisure's summary judgment briefing that addresses the timing of damages is *VRV Development L.P. v. Mid-Continent Casualty Co.*, which involved a defective

retaining wall. 630 F.3d 451, 458 (5th Cir. 2011). The wall did not collapse and damage the homeowners' backyards until after the coverage period expired. *Id.* at 457. The Fifth Circuit found that the damage to the homeowners' properties did not occur until the wall collapsed and held that the insurer had no duty to defend or indemnify. *Id.* at 457–58. The Fifth Circuit affirmed summary judgment for the insurer on grounds that the plaintiffs did not allege a covered occurrence of property damage during the policy period. Relying on Exclusion L, the Court found that coverage was precluded for damage to the retaining walls themselves ("your work") and the damage to the homeowners' property in 2007 did not occur until after the effective dates of the policies.

Construing the allegations liberally in favor of McMillin, the Court concludes that Exclusion L does not excuse Amerisure of its duty to defend McMillin against the homeowners' claims because the property damage arising from McMillin's defective work could have occurred *before* completion of work on the homes. Accordingly, Amerisure has not met its burden of "clearly and unambiguously" establishing that Exclusion L applies to the homeowners' claims *Nat'l Union*, 532 F.3d at 404; *Energy Res., LLC*, 2011 WL 3648083, at *12; s*ee also Mid-Continent Cas. Co. v. JHP Dev., Inc.*, No. CIV.A.SA04CA-192-XR, 2005 WL 1123759, at *5 (W.D. Tex. Apr. 21, 2005), *aff'd*, 557 F.3d 207 (5th Cir. 2009) (concluding that the insurer had not met its burden of establishing that Exclusion L was applicable because the summary judgment evidence suggested that the insured's work on the condominiums had not been completed when the property was damaged).

### d) Products – Completed Operations Exclusion

Three of the Policies contain a separate endorsement excluding coverage for property damage arising out of "completed operations" that Amerisure contends excuses its duty to defend the Canales, Lightfoot, Roberson, Trinh, and Vidal-Saide lawsuits. ECF No. 31 at 20–21. The

exclusion bars coverage for "property damage" included within the "products-completed operations hazard."

Here again, Amerisure asserts that the claims "necessarily arose out of McMillin's completed operations because the claimants allege they are the end purchasers of the homes." ECF No. 31 at 20. Given that "property damage" must occur "during the policy period" in order to be covered, the relevant question is not whether the homeowners purchased their homes after construction was complete but whether the damage to the property occurred while McMillin's construction work was ongoing and the applicable Policies were in place. The parties to the underlying complaints will need to produce evidence as to the facts and circumstances surrounding each allegation of property damage, including when it occurred, in order to determine whether such damage is covered under the Policies. Because the underlying allegations do not clearly allege that the property damage occurred *after* the completion of McMillin's work, Amerisure cannot establish that the Completed Operations Exclusion "clearly and unambiguously" prohibits coverage for the homeowners' claims. *Energy Res., LLC*, 2011 WL 3648083, at *12.

e) *Exclusion J(1) (Damage to Property You Own)*

Amerisure argues for the first time in its reply brief that Exclusion J(1)—excluding coverage for damage to property the insured owns, rents, or occupies—applies to the homeowners' claims. ECF No. 34 at 5–6. This argument relies on the factual allegation in the underlying complaints that McMillin sold the homes to the plaintiffs, which leads to the "reasonable inference" that McMillin must have owned them in order to sell them. *Id.*

McMillin correctly notes that, in the Fifth Circuit, "arguments raised for the first time in a reply brief are generally waived," ECF No. 36 at 1 (citing *Jones v. Cain*, 600 F.3d 527, 541 (5th Cir. 2010) (alteration marks omitted)). The defect in Amerisure's position, however, is even more

fundamental than its failure to raise the argument in its motion for summary judgment—the claim

does not appear anywhere in its operative pleading, the Second Amended Complaint. *See generally*

ECF No. 29 at 1–16. Although Exclusion J(1) is recited in the Second Amended Complaint, there

is no indication that Amerisure seeks a declaration that the homeowners' claims are excluded under

Exclusion J(1). *Id.* In contrast, the Second Amended Complaint explicitly seeks a declaration that

the claims are excluded from coverage under Exclusions J(5), J(6), K, or L. *Id.* at 14–15. The Court

cannot logically or legally grant summary judgment on a claim that does not exist. *See Cutrera v.*

*Bd. of Sup'rs of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised

in the complaint but, rather, is raised only in response to a motion for summary judgment is not

properly before the court." (citing *Fisher v. Metro. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.

1990))).

Moreover, even if the Court were to grant Amerisure leave to amend its complaint to add

a claim seeking a declaration that Exclusion J(1) applies to exclude the underlying allegations from

coverage under the Policies, Amerisure would not be excused from its duty to defend as a matter

of law. In its sur-reply, Amerisure asserts that it raised Exclusion J(1) in reply to McMillin's

argument that the underlying petitions leave open the possibility that damage occurred before the

homes became completed operations. ECF No. 38 at 1–2. That is, accepting that the property

damage occurred while McMillin's building operations were ongoing, Amerisure submits that

McMillin must have owned the homes during construction in order to sell them after the

completion of construction.

The parties appear to agree that none of the complaints explicitly allege that McMillin

owned, rented, or occupied the applicable homes while construction was ongoing. *See* ECF No.

34 at 5–6 ("leading to a reasonable *inference*" that McMillin owned the property" (emphasis

added)) and ECF No. 36 ("the underlying pleadings are silent as to the nature of McMillin's interests in the homes while they were being constructed"). While Amerisure's inference is not unreasonable, the Court declines to make any assumption about the ownership of the homes during construction, especially in light of the ever-increasing complexity of construction and real estate transactions.

The district court in *Federal Insurance Co. v. Northfield Insurance Co.* took the same approach where the insurer asserted that Exclusion J(1) precluded coverage for any claims of property damage. No. 4:14-CV-0262, 2017 WL 11633133, at *17 (S.D. Tex. Nov. 15, 2017). There, the insurer argued that the allegations in the pleadings established that the alleged property damage occurred on property the insured "owned, rented or occupied." *Id.* The Court disagreed and found that underlying pleadings did not clearly define the rights that the insured had in the property because there were no allegations in any of the pleadings that the insured owned, rented or occupied the property. *Id.*

Here, the underlying complaints allege only that McMillin was the contractor or builder of the homes and that McMillin sold the homes. The Court agrees with McMillin that "[t]he underlying allegations are not specific enough to conclusively establish that McMillin had an ownership interest during 'ongoing operations' at each home." ECF No. 36 at 3; *see also Energy Res.*, 2011 WL 3648083, at *12 ("Only if the exclusion clearly and unambiguously prohibits coverage does an insurer meet its burden."). Because the underlying pleadings do not allege McMillin owned the homes during their construction, property damage to the homes during McMillin's ongoing operations is not precluded from coverage by Exclusion J(1).

### 3.   The costs of "tear-out work"

The damage that occurs when defective work is removed in preparation for replacing it is often known as "tear-out" or "rip and tear" work. Amerisure asserts that the Policies do not cover tear-out work performed to remove and replace the stucco system because defective work itself does not constitute covered "property damage" and any ensuing tear-out work would not qualify for independent coverage under the Policies.[11] ECF No. 31 at 21–27.

Amerisure relies on its arguments concerning the deficiencies in the homeowners' factual allegations of "property damage" and the applicability of various exclusions to conclude that the Policies do not cover the removal and replacement of McMillin's defective work. This position is ultimately unavailing, however—at least with respect to the duty to defend—because it is premised on the same faulty reasoning advanced in Amerisure's earlier arguments. The Court has concluded that the underlying claims have sufficiently alleged "property damage" outside of the defective work to invoke Amerisure's duty to defend and that none of the exclusions apply.

Here again, Amerisure cites to a case addressing an insurer's duty to indemnify a first-party claimant for the proposition that Amerisure is not obliged to defend McMillin against potential third-party claims. *See id.* (citing *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 24 (Tex. 2015)). In *U.S. Metals*, the plaintiff sold ExxonMobil Corp. some 350 custom-made, stainless steel, weld-neck flanges for use in constructing diesel units at certain refineries. The flanges were welded to piping and covered in a high temperature coating and insulation. Several flanges leaked during testing, and ExxonMobil determined that it was necessary to replace the

---

[11]     As to the availability of independent coverage for tear-out work, Amerisure argues in part that, because none of the homeowners have alleged that tear-out has already occurred, any damage caused by such work cannot have occurred during any of the Policy periods—the last of which ended in 2018. ECF No. 31 at 24. The Court will not address the "independent coverage" argument, as McMillin appears to concede that, absent ongoing damage to property other than the defective work, tear-out work would not be covered under the Policies. *See* ECF No. 29–30.

flanges to avoid the risk of fire and explosion. Replacing the flanges was an intensive process—it required stripping (and destroying) the protective coating and insulation, cutting the flange out of the pipe, removing (and destroying) gaskets, grinding the pipe surfaces smooth, replacing the flange and gaskets, welding the new flange to the pipes, and replacing the temperature coating and insulation. Based on the delays in production and costs of replacing the flanges, ExxonMobil sued U.S. Metals for over $23 million. *See id.* at 22. U.S. Metals settled for $2.2 million and then sought indemnification from its insurer, Liberty Mutual Group, Inc. Liberty Mutual denied coverage, and U.S. Metals sued to determine its rights under the policy. The Supreme Court of Texas concluded that the "increased risk of danger" caused by the installation of the defective flanges in the diesel units did not constitute a "physical injury" within the meaning of the CGL policy. *Id.* at 24–25. Assessing an exclusion not raised in this litigation, the court held that the policy did not cover the loss of use of the diesel units—which were restored to use by replacing the flanges—but did cover the replacement of the the insulation and gaskets destroyed in the process of replacing the gaskets. *Id.* at 28.

*U.S. Metal*, like other cases addressing the duty to indemnify, depended "on the facts and circumstances of the alleged injury-causing event." *D.R. Horton–Texas*, 300 S.W.3d at 741. The replacement of the flanges was not covered because the increased risk of danger they posed once installed did not constitute a "physical injury" to the diesel units themselves. *U.S. Metals*, 490 S.W.3d at 24–25. Far from suggesting that all tear-out work related to defective work is excluded, *U.S. Metal* explicitly identified tear-out work that was ultimately covered based on the details of the repair process. Similarly, in *Lennar*, a Texas Court of Appeals held that the cost of removing and replacing defective insulation in water-damaged homes was "because of property damage," but the cost of doing so in homes that had no water damage was not. 200 S.W.3d at 677–79.

Here, defective stucco is alleged to have damaged other property. There are no allegations in the petitions that repair of the stucco exterior would only be a preventative measure, intended to avoid the "risk" of future property damage. The extent of any property damage and whether repair or removal of the stucco exterior is necessary to fix any covered damages will depend upon the facts in each instance. For the duty to defend analysis, the insured need only demonstrate the potential that tear-out work will be necessary. Based on the eight-corners rule, the Court concludes that, liberally construed, the factual allegations potentially support a covered claim for tear-out costs and thus invoke the insurer's duty to defend. *Id.* at 310.

### 4.  The RCLA Demands

Amerisure notes that three of the insurance claims are demands under the RCLA which cannot trigger its duty to defend under the applicable Policies unless they mature into lawsuits. ECF No. 31 at 13. McMillin does not appear to dispute this interpretation of the Policies. *See generally* ECF No. 33. Accordingly, based on their procedural posture as pre-suit claims—and not the substance of their allegations—the Court concludes that the RCLA demands do not trigger Amerisure's duty to defend those claims against McMillin.

### B.  Amerisure's Duty to Indemnify

"Texas law only considers the duty-to-indemnify question justiciable after the underlying suit is concluded, unless 'the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify.'" *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 529 (5th Cir. 2004) (*Farmers Tex. Cnty. Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997)). The Fifth Circuit has further observed that "district courts have discretion to decline to grant relief as to the duty to indemnify under the authorization of the Declaratory Judgment Act." *Id.* at 536–37

Where, as here, there is a duty to defend, the issue of whether there is a duty to indemnify becomes nonjusticiable. *See id.* at 536. Accordingly, acting in diversity and with respect for the Texas rule, the Court exercises its discretion to dismiss without prejudice Amerisure's claim for declaratory relief as to its duty to indemnify McMillin for the underlying claims.

### CONCLUSION

The Court concludes that Amerisure has failed to meet its burden of establishing that there is no genuine issue of material fact as to its duty to defend the claims—other than the RCLA demands—against McMillin. The question of Amerisure's duty to indemnify McMillin will depend on the resolution of the underlying lawsuits and thus is nonjusticiable at this time. Accordingly, Plaintiff's motion for summary judgment (ECF No. 31) is **GRANTED IN PART** as to the RCLA demands and **DENIED IN PART** as to all other claims for relief.

Amerisure's claim for declaratory relief as to its duty to defend McMillin against the underlying claims is **DENIED**, and its claim for declaratory relief as to its duty to indemnify McMillin for the underlying claims is **DISMISSED WITHOUT PREJUDICE** as nonjusticiable.

Given the Court's conclusion that Amerisure's duty to indemnify is nonjusticiable at this juncture, McMillin's counterclaim for breach of contract for Amerisure's failure to indemnify McMillin against the homeowners' claims is likewise nonjusticiable. McMillin is **DIRECTED** to file an advisory within 30 days of this order addressing whether and how it intends to proceed with its surviving claim for breach of contract based on Amerisure's refusal to defend McMillin against the underlying claims.

It is so **ORDERED**.

**SIGNED** this 8th day of March, 2022.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE